Co., 2022, 1831, 1833, 1835, and 1836, Mr. Andre. Thank you, Your Honors. May it please the Court. I don't know if anyone on the panel has ever worked construction or had family members or friends who work construction. But if you did, you probably know that modifications of heavy machinery is very rare. And it's taken very careful consideration. The reason it's very rare is because heavy machinery handles heavy loads. So when you look at the prior art in this case, you look under that filter. That modification is very difficult and it's very serious. So modification to heavy equipment is very rare. Now this case is a little bit unusual. We have empirical evidence that the PTAB used hindsight to get this obvious determination. The empirical evidence is this. The base prior art in this case is 1974. Your argument in your brief speaks a lot about hindsight. Explain to me your view of that. What does that mean to you, this hindsight? It means you look back and you use the patented technology as a roadmap to apply it to the prior art. Without the patented technology... If it's based on the patent and the patent technology, how is it hindsight? Well, you're using that as a roadmap. So you're looking back at the prior art and saying, in hindsight, we could have done this feature. Like in this particular instance, the base prior art goes back to 1974. For 36 years, every concrete paver manufactured of record was built the same way. 2010, our invention comes out and things change. So for 36 years, that's empirical evidence to show that nothing changed in the way they were designed. Now, that design is having the jacking column attached to the crawler track. Nothing changed until the patent came out. There's no rotary connection between the crawler track and the column in any piece of prior art. And the PTAB doesn't point to any. So how they try to cure the lack of prior art and make an obvious determination is they found Rio, a piece of prior art from 2005. And Rio has a rotating connection, but it's not between the crawler track and the column. What are you arguing, Mr. Andre? That prior art was not all analogous? That there was no motivation to combine? Or that the secondary considerations overwhelmed any presumption of obviousness? Well, I do want to get to the secondary considerations. You're telling a story. Why don't we focus on the particular issues? Okay, so the prior art doesn't teach the rotary connection where it's found in patent. So what I'm arguing here is Rio doesn't solve the problem. So there's no motivation to combine, and it was based on hindsight. So those are two legal components. Rio had multiple problems. One, it wasn't a concrete paving machine. So do you agree that Rio expressly discloses, and I think maybe just to help point us to something, it's on appendix 2497 in column 5, lines 8 to 11, if you have access to the appendix. Do you have access? Pardon? Do you have the appendix? Yes. Do you have your files with you? Yes. When you take a look at that particular section of Rio, do you agree that that supports disclosure that the rotary actuator can be located on the lifting column along the axis? And I point you to appendix 2497, column 5, lines 8 to 11. Sorry, I can't read patents without my glasses. I wear glasses, please. And you say column what? Column 5, lines 8 to 11, appendix 2497. Yes. It's located, it's spaced apart from the first actuator along the lifting column axis. Now the key here, and what's admitted to by Petitioner's brief, is that it's on the column. It's on the axis of the column. It's always on the column. It's never separate from the column. Rio always teaches that the rotating connector is along the axis of the column, it's always on the column. And this is page 34 of Pelley's brief, and you'll see that. It's akin to, if I was a jacking column and I wanted to look right under Rio, I'd have to turn my whole body to go right. Our invention put in a separate component like a neck, and we can just look right by doing that. So it's a big difference between Rio. Rio is very explicit. It's always on the column, and it rotates the entire column. It never rotates just the crawler track, and that's the big difference. Why doesn't this support what is found in the decision on appendix page 74? And the paragraph begins with, We find that Rio does not limit the position of rotary actuator 44. I'm sorry, what, 74? Appendix 74. We find that Rio does not limit the position of the rotary actuator to the top of the lifting column. It's not to the top of the column. It can be anywhere on the column. We stipulate to that, and we say that in our brief. You can put Rio anywhere on the column. That's key. It's explicit. It has to be on the column. Well, our invention was we took it off the column. We put it between the column and the crawler track. It's nowhere on the column. That's a big distinction because if it's on the column, in order to rotate, it has to turn the column. That's a major redesign of the product. In fact, if you look at what the board relied on, they relied on a declaration of an expert that actually reconstructs the entire column of Rio, makes it obsolete. The key feature of Rio is no longer applicable. In order to get to that position, you had to redesign the complete column of Rio and take the rotating component and move it someplace where Rio explicitly says it should not be. Rio explicitly says it's on the column or anywhere along the column. That's a big distinction. Also, if you look at the expert declaration, and this is paragraph 53 of the expert declaration, appendix 1755-56, the expert declaration is just exactly that type of using the patent as a road map in hindsight bias. That's the first point. I'm saying there's absolutely no reason why someone would go back and redesign a product like Rio, which is not a paving machine, completely against the way Rio teaches. If we don't buy your hindsight argument, what would you say is your best argument to win in this case? Well, then, secondary considerations, not obviousness. In this case, this case is very similar to the Volvo Penta case that came out last August from this court, where there was long-felt need, we established the industry praise, we established copying. In fact, PTAP found that there was a nexus between the long-felt need and the industry praise. All you had to do was show the evidence of the long-felt need. In this case, we put in affidavits or declarations from people in the industry. In those declarations, they established there was a long-felt need for at least ten years, going back to the early 2000s. The board found that it made two legal errors. First, they misapplied the Zaxcom case. They said Zaxcom reduces the weight of the long-felt need because there is an embodiment in the prior art. There is no embodiment of the rotating component in the prior art located where it was. They came up with some kind of analogy saying on the ground versus in the air, which is a weird analysis. That's how the device functions. It's not a claimed embodiment, whether it's on the ground or in the air. The claimed embodiment, there is no claimed embodiment in the prior art. That's the reason they had to cobble together this piece of prior art. They misapplied the Zaxcom case to start with to reduce the weight of long-felt need. Then they came up with an arbitrary determination that ten years is not long-felt. It's not long enough. That's just not the law. It came to the case of ten years. Actually, the Volvo Penta case has very similar circumstances. That ten-year period, the long-felt need was there. That was more than sufficient. The board said not long enough. The second aspect was industry praise. We had declarations put in, once again, from people in the industry. They called this invented technology game changer and revolutionary. We put in an industry publication talking about how this changed the industry, this invention changed the industry. The board criticized that industry praise because it didn't come from a competitor. Now, granted, the court has said if it comes from a competitor, it deserves more weight. But you don't take away the weight just because it's not from a competitor. In fact, it came from multiple sources, and it seemed to acknowledge that that should be more than enough to establish the industry praise. Finally, with my last minute here, I want to talk about copying. There was evidence that showed that the product that was the subject of the invention from GSD, my client, was introduced to the market in 2010. The petitioner's product came out in 2015. There's evidence to show they were substantially similar. They had access to it because we were at trade shows with our product. We were gaining market share. There was a major shift in the industry as soon as we launched with our new crawler track design where you could turn it on. Are you asking this court to essentially re-weigh the evidence put in on secondary considerations? Well, not necessarily re-weighing the application of law, but where they de-weighed it. Look at the application of Zaxcom. That's the issue of law where they just misinterpreted the case. They said that there was no evidence that there was an embodiment and a priority. It's not actually re-weighing the evidence, but it's taking away the negating factors. And then that 10 years was not enough. I think this is not weighing the evidence. Is 10 years enough of a long-felt need? Is industry praise, the fact that it's not from a competitor, is that enough? Because the board came up with a very conclusory statement in its findings saying that they didn't like the language of the declarations and completely ignored the industry publications that were saying the praises of the invention. I'll reserve the rest of my time if you have no further questions. We will save it for you. Thank you. Mr. Morose. Thank you, Your Honor. May it please the court. The board here considered a lot of obviousness evidence. It considered evidence about the prior art, evidence from motivation to combine, testimony from witnesses, evidence from expectation of success. It even considered evidence from GNZ's own experts that supported Gomeko's case of obviousness. It considered evidence of state of the art. It put all of this evidence on a scale, and it considered it alongside of GNZ's secondary considerations evidence, and it found obviousness. This is exactly what the board is supposed to do under this court's law. It put everything on the scale first, made no premature conclusions, and then made the obviousness finding after.  One would almost think that, in and of itself, that should overcome any presumption of obviousness. Sure, Your Honor. I think that is overstated and doesn't compare in reality to what the state of the art and the prior art evidence shows. So to answer that question, I think it's important to understand what the purported point of novelty is. In that patent, when you read just the face of the patent, it discloses a control system for moving a swing leg for a slip form paper in coordination with the crawler track, and it does so with a rotary actuator. We found a prior reference, the real reference, that does exactly that. But then they had to pivot, no pun intended, and come back to the location of the power drive. So they made this whole appeal or the whole case about the location of the power drive. It's really the control system with a rotary power drive that gets you the advantages that Your Honor was speaking about a moment ago. And Rio provides those advantages. So it's important to not look at that statement detached from reality and view it in context with what the prior art was. This long-felt need that existed for this long period of time, Rio solved that long-felt need in 2005. There was no decade-long long-felt need. If you ignore Rio, then you can make arguments, but you can't ignore Rio in the analysis. This was a feature that was known, the feature that they're arguing is novel, that was known for a long time. Putting a rotary drive at the bottom of a jacking column in a road construction machine, such as a slip form paper, and using it to turn a crawler track was known for decades. And it kept being reintroduced in various designs in the prior art, the Miller reference in the 70s, the Littman reference in the 80s, the Johns reference years after that. So these were design choices that were being made. This isn't an anticipation case, though. So the prior art did not disclose the exact invention. Is that right? Well, the prior art, once they narrowed the case down, so there's no dispute that the combination of references discloses all of the non-power drive limitations in the claim. So they narrowed this down to one potentially non-obvious feature, and it was the location of the power drive. It wasn't even the coordinated movement between the leg and the crawler track. It was the location of the power drive. And our point was, they're arguing that was a product of hindsight. Our response was, it can't be a product of hindsight, because that feature was known in the art. Now, if that feature wasn't known in the art, then their hindsight argument might have some legs. But the reason that state-of-the-art reference is so helpful, the state-of-the-art reference is the Miller reference, the Littman, and the Johns reference. The reason those are so helpful is because it allows you to conclude that there was no hindsight. By definition, there was no hindsight. There was no roadmap used with a patent forced you to use because it was known. So even though this is not an anticipation case, the zeroing in of the state-of-the-art evidence and the disclosures in Rio about that feature are very relevant and probative to obviousness. What is your response to opposing counsel's statements about on the column, like the discussion I was having with him with respect to Rio? Your Honor, I think that one was addressed squarely by the board. And what jumped out to me there was the gum on the shoe footnote. It's on appendix page 74. So the footnote reads, to the extent patent owner argues that positioning rotary actuator 44 at the bottom of lifting column 46 is not, quote, positioned on the lifting column 46, as disclosed in Rio, we do not agree. And then it cites to the patent owner's response, seemingly arguing that positioning rotary actuator 44 at the bottom of lifting column 46 is not on the lifting column. Then the board says, and I think this is the important point, to use a simple analogy, if a person gets gum stuck on the bottom of his or her shoe, that gum is on the shoe. So if it's at the bottom, it's still on. It's just on the bottom. Importantly, regarding that point, Your Honor, even if that is a situation where parties can disagree, this is where, which I don't think you can, and I think the board got it right. It based its decision on a factual analysis of the prior art. But even if this is a situation where parties can disagree, the substantial evidence review, I think, takes care of that. So as this court stated in Monsanto Tech v. E.I. DuPont, if two inconsistent conclusions may reasonably be drawn from the record of evidence, the board's, quote, decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence. I think a lot of the arguments in this case boil down to that. They're not really arguing that the board failed to consider something. This is a very detailed, thorough set of four opinions. They considered the arguments of the parties, both parties. They analyzed all of the arguments and what resulted are over 400 pages of final written decisions in these four IPRs. So they did their work. And because of that, not much, if anything, was overlooked. Not much, if anything, was analyzed. So they don't say the board failed to consider this critical evidence. You said not much, if anything, was analyzed? Sorry. It was forgotten to be analyzed or overlooked. I apologize, Your Honor. I meant to say. Like in 450 pages. I think they were doing a little analysis. Thank you. Thank you, Your Honor. That was a misstatement. So they analyzed every argument full speed ahead. And because of that, what they're left with is a record of a bunch of facts on the scale. And the most they can do is disagree with what the board did. And that's where substantial evidence review matters so much. Because if you have two people disagreeing over something and the board finding in one favor, that gets affirmed under substantial evidence. If the board doesn't have any questions about secondary considerations, I'm happy to see the rest of my time. That's fine. We're not the board, but that's. I mean, the court, Your Honor. Sorry, Your Honor, the court. Thank you very much. Mr. Andre has some rebuttal time. Going back to Judge Cunningham's question about the rotation connection, where it's located. As my colleagues talked about in their brief, they say the rotary actuator can be located, rotate the crawler track on the jacking column at different locations, including the bottom of the lifting column. It's always on the column. The claim language is very specific. The rotary connection is between the jacking column and the crawler track. It's not on it. And the board's analogy with the piece of gum on the shoe is,  if it was on the bottom of the shoe and it was on the top of the shoe, then it wouldn't be the same thing. It would be on the shoe, but it wouldn't be the same thing. Here, the rotation connection is very specific in every single claim. It's between the column and the track. I mean, doesn't Rio actually have some language talking about along the column as opposed to on the column? Do you see a distinction there? Not really because the key to being along the column is what it's rotating. The rotation connection in Rio always rotates the column and whatever's attached to it. And that's a big distinction because it just wouldn't work with a concrete paver. Rio's a much smaller device. It's a fraction of the size of a concrete paver. That's the reason they couldn't find a concrete paver that actually had these components in it as prior art. The prior art shows that the actuator can be anywhere along the column. The prior art shows that. So wouldn't it – it's not a big leap, it seems to me, for a person skilled in the art to say, well, let's just put it between the crawler and the column jack. Except no one did it for 36 years. That tells you it's not obvious. That's the empirical evidence. If it had been a simple determination, they would have done it before 36 years. That is the key component on the obvious determination. That's the issue of law here. If it would have been so simple. That's different, though, right? I mean, even if Sumao's correct that a person who's skilled in the art could not put too much effort to say, well, look, if the actuator can go anywhere along the column, why wouldn't I put it down here on the bottom, in between the crawler and the column? You're saying, well, that can't be right because 30 years went by and nobody did it. That's a separate argument. Well, and if you take it off the column, you have to redesign the column altogether because the column is designed to turn. You have to take the column that's disclosed in Rio and completely redesign it. And their expert actually said – that's what their expert said in paragraph 55 of his declaration. He said, I had to redesign the column. This is how I would do it. But there's no basis to do so. It actually takes the column and makes it ineffective altogether. And finally, just the conclusory of the long-felt need on page 87, 88. That conclusion is enough to say that they didn't meet the proper analysis for a long-felt need. Thank you, counsel. Appreciate it. Thank you. The case is admitted.